SHIRLEY S. ABRAHAMSON, C.J.
¶ 73. (<dissenting). The majority opinion says it is doing one thing but does another.
¶ 74. First, the majority opinion professes to use the standard in State v. Leach, 124 Wis. 2d 648, 666, 370 N.W.2d 240 (1985), regarding expert testimony for the responsibility phase of a bifurcated trial but instead converts it into a vague and unmanageable standard of its own fashioning. Whereas Leach clarifies that no expert testimony is needed and lay testimony alone is sufficient to prove mental disease or defect, the majority opinion declares, without citation to any authority, that "[i]n only an exceptional case with extraordinary facts may a defendant carry his burden in the responsibility phase of a criminal trial by relying solely on his own testimony." Majority op., ¶ 7. The majority opinion does not explain what makes cases "exceptional" or facts "extraordinary."
¶ 75. Second, the majority opinion professes to merely address the "timing" of the directed verdict, when in fact it addresses the ability of a defendant to offer any evidence, specifically his own testimony, to show mental disease or defect. In the instant case, the circuit court heard no testimony on the defendant's alleged mental disease or defect. The entire second phase of the trial was precluded by the circuit court's sua sponte moving and granting its own motion for a *661 directed verdict in favor of the State. Defense counsel did not appear to understand that the circuit court was preparing to grant a directed verdict on its own motion in favor of the State.
¶ 76. Perhaps the defendant would have been unable to meet his burden to prove that he was not guilty by reason of mental disease or defect, but how could the circuit court know without giving the defense attorney the opportunity for a full and proper proffer? Perhaps the defendant would not have persuaded the jury, but that is not the appropriate test for precluding the defendant's testimony.
¶ 77. Finally, the majority opinion concludes that deprivation of a defendant's right to present evidence and his own testimony is not preferable, not fair, and not judicious. The majority opinion proclaims "that it is preferable, fairer, and more judicious to allow a defendant to put on his evidence in the responsibility phase before dismissing the NGI defense." Majority op., ¶ 65. Curiously, given the choice, the majority opinion opts to endorse the less preferable, less fair, and less judicious procedure here.
¶ 78. The majority opinion holds that the errors that led to the circuit court's blanket exclusion of the defendant's testimony through a directed verdict prior to the presentation of the defendant's evidence were harmless and "did not affect [the defendant's] substantive rights under the facts of this case." Majority op., ¶ 61. In so doing, the majority opinion fails to confront the true nature of a circuit court's error in preemptively preventing a defendant from testifying at the responsibility phase of a bifurcated trial.
*662 I
¶ 79. Contrary to applying Leach, as it professes to do, the majority opinion adds and invents new components to the standard announced in Leach, making it almost impossible for a defendant to make a sufficient proffer absent expert testimony.
¶ 80. The holding in Leach is clear that lay testimony alone is sufficient to show mental disease or defect: "A favorable expert opinion is not an indispensable prerequisite to a finding of mental disease or defect." Leach, 124 Wis. 2d at 666.
¶ 81. The majority opinion first properly states the law that there is no requirement for expert testimony in mental disease or defect cases, citing State v. Perkins, 2004 WI App 213, 277 Wis. 2d 243, 689 N.W.2d 684:
[Wlhere the issue is within the common understanding of a jury, as opposed to technical or esoteric, and when lay testimony speaks to the mental illness, expert testimony, though probative, may not be required.
Majority op., ¶ 43.
¶ 82. Indeed, Perkins asserts that "requiring expert testimony. . . represents an extraordinary step, one to be taken only when unusually complex or esoteric issues are before the jury." Perkins, 277 Wis. 2d 243, ¶ 16 (emphasis added, internal quotation marks & quoted source omitted).
¶ 83. The majority opinion turns Leach and Perkins on their heads, stating that the requirement of expert testimony is the norm, not the exception:
[I]n only an exceptional case with extraordinary facts may a defendant carry his burden in the responsibility phase of a criminal trial by relying solely on his own testimony.
Majority op., ¶ 7.
*663 ¶ 84. For the proposition that expert testimony is generally required for the responsibility phase of trial, the majority opinion offers no citation. Perkins and Leach stand for the contrary proposition of law.
¶ 85. The majority opinion asserts that instances where expert testimony is not required are "exceptional" or "extraordinary," but Leach and Perkins recognize that they are the baseline rule. No expert testimony is necessary for a jury to make a determination of mental disease or defect under the statutes[1] or under Leach.
¶ 86. The majority opinion provides no guidance as to when expert testimony is required or whether it was required in the instant case to avoid a directed verdict. I would follow Leach and Perkins and not switch to the vague and unmanageable standard the majority opinion fashions.
II
¶ 87. The majority opinion phrases the issue of the directed verdict granted by the circuit court prior to any testimony as an issue of "timing."[2] Yet denying the *664 right of the defendant to testify is not an issue of mere "timing." Rather, it implicates the fundamental principle that the defendant should be allowed to put on evidence, especially his own testimony.[3]
¶ 88. In the instant case, the circuit court sua sponte directed the verdict in favor of the State "before the defendant was able to introduce any evidence in the responsibility phase of the trial. . . ." Majority op., ¶ 62 (emphasis added).
¶ 89. The majority opinion justifies this exclusion by stating that the facts of the instant case "allowed the circuit court to assess all the defendant's NGI evidence before the commencement of the responsibility phase . . . ." Majority op., ¶ 65. Yet, the circuit court had no way of knowing exactly what the defendant would have testified to in the second phase of trial. When asked what evidence the defendant would put on, defense counsel stated "the evidence I have is my client's testimony." Nevertheless, we do not know what a jury might have concluded after hearing the defendant in the responsibility phase of trial.
¶ 90. The majority opinion even speaks out against the anomalous and unfair procedure created by the circuit court's directed verdict in the instant case prior to hearing any testimony by either the defendant or the State. See majority op., ¶ 65. Nevertheless the majority opinion affirms the circuit court's procedure and result.
*665 III
¶ 91. I agree with the majority opinion that the circuit court erred in deciding that the defendant was incompetent to testify. Majority op., ¶¶ 53-54.1 cannot agree, however, that the circuit court's directed verdict without hearing the defendant's testimony constituted harmless error. Indeed, I am unconvinced that harmless-error analysis is the appropriate test.
¶ 92. Once a statutory right is implicated, procedural due process applies, and the defendant is entitled to proper notice and hearing congruent to the defendant's interest, the state's interest, and the value of the additional safeguard. See Mathews v. Eldridge, 424 U.S. 319 (1976).
¶ 93. The majority opinion simply assumes that a harmless-error analysis applies in the instant case after noting that the circuit court committed several errors.[4] Due process may require a different test when a defendant is prevented from testifying outright. The majority opinion does not consider whether the error to exclude totally a defendant's testimony at the responsibility phase of trial should be subject to harmless-error analysis at all.
¶ 94. The issue of whether there was error and whether the harmless-error analysis applies when a circuit court entirely excludes a defendant's testimony on the grounds of competency is before this court in the context of a criminal trial in State v. Nelson, 2014 WI 70, _ Wis. 2d _, 849 N.W.2d 317. The majority opinion in Nelson asserts that although error is assumed when a criminal defendant is barred from testifying, such error is reviewed under a harmless-error *666 analysis.[5] As I note in my dissent in Nelson,[6] such a standard is inappropriate for evaluating the error in the present case that so strongly impugns the fairness of the proceeding and whose effect on the trial cannot be quantified.
IV
¶ 95. I write additionally to comment on the majority opinion's place in what appears to be a troubling development in several of this court's recent criminal cases: The court assumes, without deciding, that error occurred and then concludes that the assumed error was harmless. See, e.g., State v. Nelson, 2014 WI 70, _ Wis. 2d _, 849 N.W.2d 317 (assuming error in barring the defendant from testifying, but concluding that a harmless error test applies and that the error in excluding the testimony was harmless); State v. Rocha-Mayo, 2014 WI 57, 355 Wis. 2d 85, 848 N.W.2d 832 (assuming error in admitting evidence of a preliminary breath test and in permitting faulty jury instruction, but holding that any error is harmless); State v. Deadwiller, 2013 WI 75, ¶ 41, 350 Wis. 2d 138, 834 N.W.2d 362 (assuming error in admitting potential confrontation clause violation but holding that any violation was harmless).
¶ 96. By repeatedly assuming error and concluding that the error is harmless, this court fails to determine whether any systemic problems exist and fails to provide adequate guidance to litigants, the circuit courts, and the court of appeals regarding important day-to-day practices and procedures.
¶ 97. For the foregoing reasons, I dissent.
*667 ¶ 98. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

 See majority op., ¶ 62.

 Cf "A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness." Rock v. Arkansas, 483 U.S. 44, 52 (1987); Wis. Const. Art. I, § 7.

 Majority op., ¶ 29.

 State v. Nelson, 2014 WI 70, ¶ 23, 849 N.W.2d 317, 849 N.W.2d 317.

 Nelson, 2014 WI 70, ¶ 72 (Abrahamson, C.J., dissenting).